AO 91 (Rev. 11/11) Criminal Complaint

FILED
UNITED STATES DISTRICT COURT
ROSWELL, NEW MEXICO
AUG 25 2025
MITCHELL R. ELFERS
CLERK OF COURT

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

United States of America
v.
Thomas Rees

Defendant(s)

Case No. 25-MJ-3362

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 25th 2025 in the county of Eddy in the State and District of New Mexico, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18 U.S.C. § 2314 | Interstate Transportation of Stolen Property |
| Title 18 U.S.C. § 2 | Aiding and Abetting |

This criminal complaint is based on these facts:

See attached Probable Cause Statement

☑ Continued on the attached sheet.

TRENT BOONE — Digitally signed by TRENT BOONE Date: 2025.08.23 15:22:25 -06'00'

*Complainant's signature*

Trent Boone, Special Agent

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 08/25/2025

*Judge's signature*

City and state: Las Cruces, NM

Barbara S. Evans ~~Jerry H. Ritter~~, U.S. Magistrate Judge

*Printed name and title*

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

1. I am a Special Agent in the Bureau of Land Management (BLM), United States Department of Interior. I have been employed since June 2015. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2507(7) and am empowered by law to conduct investigations and to make arrest for offenses enumerated in 18 U.S.C. § 2516.

2. My experience as a Special Agent includes, but is not limited to, conducting physical surveillance, interviewing witnesses, writing affidavits for and executing search warrants, working with undercover agents and informants, issuance of administrative and federal grand jury subpoenas, analysis of phone toll and financial records, I have become familiar with the manner in which crude oil theft operations are structured, to include how the crude oil is stolen, transported, and sold.

3. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, from discussions with other agents of the FBI, and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer or witness who may have had either direct or indirect knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. This affidavit does not include every fact known to me but only facts to establish probable cause.

4. On June 18th, 2025, an FBI Special Agent of the Midland, Texas Resident Agency Office was notified by a confidential source of information (CS) that Maxwell Jensen was seeking to orchestrate a scheme in which he would pay off employees of oil production companies for crude oil. The CS explained to FBI that Jensen would be storing the stolen crude oil at 4154 7 Rivers Highway, Carlsbad, New Mexico (Target Location), and that Jensen was seeking a vacuum truck

driver to pick up oil from third party locations, and the Target Location was used to receive approximately 600 barrels of oil every day. At current crude oil prices 600 barrels is valued at $39,000.

5. After FBI informed me of the scheme, I started doing periodic surveillance of the Target Location. The location has three 500-barrel frac tanks and a white water hauling vacuum truck (Target Vehicle) that was frequently parked there. In my experience, I know that crude oil thieves utilize frac tanks to store stolen crude oil and vacuum trucks to steal millions of dollars' worth of crude oil from a variety of locations, including oil pipelines. The Target Vehicle's US DOT number is 3183291, and it bears the company name M.I.S. LLC in red lettering on its side.

6. On July 22, 2025, I observed the Target Vehicle leaving the location. I followed from a distance as it went out into the oilfield. I observed the Target Vehicle drive up to a Plains All American Pipeline site, located at coordinates 32.62494, -104.10080, a site in New Mexico, and hook up to a portion of the pipeline at the site. I left the area and returned later to photograph the scene. While I was leaving the area after taking photos, I observed that the Target Vehicle had already traveled to another Plains All American Pipeline site, located at coordinates 32.65158, -104.10264, another site in New Mexico, on the same pipeline. A Plains All American company truck was there assisting the Target Vehicle driver, suggesting that a Plains All American employee may be complicit in the scheme to steal the crude oil out of the pipeline.

7. On July 25, 2025, I observed two crude oil hauling commercial motor vehicles (CMVs) parked at the Target Location. I observed the drivers of the CMVs hooking up their hoses to one of the three 500-barrel frac tanks, and they appeared to be filling up their crude oil haulers. I called agents for assistance in following the CMVs to where they were taking the stolen crude oil. The CMVs took the crude oil from the yard south on Highway 285 into west Texas, to a stop at a Lease

Automatic Custody Transfer unit (LACT) at coordinates 31.59557 -103.26467, located in West Texas. The agents observed the company name on the side of the CMVs to be 9G Logistics with a US DOT number 4265065. The Agents and I observed each CMV hooking up to the LACT, where they appeared to empty their loads of crude oil into the LACT. After the two CMVs were finished, one agent drove up to the LACT and took photos of the company name on the LACT. The company's name was Gibson Energy.

8. On July 29, 2025, I submitted a tracker warrant for the Target Vehicle suspected of stealing and transporting stolen crude oil, and it was signed by a federal magistrate judge the following day.

9. On July 30, 2025, I coordinated a multi-agency operation and we observed the suspects stealing crude oil.

10. A review of the tracker data revealed that the Target Vehicle made 15 trips to Plains All American Pipeline sites from July 31, 2025, to August 11, 2025. On August 11, 2025, the tracker appeared to fall off the Target Vehicle. The tracker was located and placed back on the Target Vehicle on August 14, 2025.

11. On August 13, 2025, I went to one of the locations where the vacuum truck made multiple trips to Plains All American Pipeline sites to place a game camera to identify the Plains All American Truck working with the suspects.

12. The tracker data revealed that from August 15, 2025, to August 18, 2025, the Target Vehicle made four trips to Plains All American Pipeline sites. A total of 23 trips were recorded on the tracking device going to the Plains All American pipeline sites from July 22, 2025, to August 18, 2025. In my experience, I believe each of these trips involved the theft of crude oil.

13. In recorded phone conversations between and the CS and Maxwell Jensen, Jensen discussed his associate, "Tom," (Rees) who ran Jensen's yard in Carlsbad, New Mexico under the business "Hound Dog." Over the course of the recordings, Jensen explained that Hound Dog received 25% of the illicit profits for oil sold from Target Location in Carlsbad, and, as of July 29, 2025, Rees had produced more than 100 load tickets.

14. On August 21, 2025, I received Mountain of America Credit Union and Wells Fargo Bank Records on Thomas Rees. On one business account application Thomas Rees is identified as the sole owner of Hound Dog Energy. One receipt for a wire transfer from Mountain of America Credit Union shows Hound Dog Energy with an address at Target Location where the crude oil theft scheme is occurring.

15. In recorded phone conversations between the CS and Maxwell Jensen, Jensen discussed his associate, "Chris," (Ortega), a former member of the "Bandidos" group, who accepted loads of crude oil at the Target Location. Over the course of the recordings, Jensen stated that Ortega could "vet" additional drivers who could sell oil to the Target Location and other locations maintained by Jensen.

16. On August 21st, 2025, the CS was talking to Rees and Ortega. Ortega said, "we got a couple people who bring us oil out here." Rees laughed and said, "sometimes we get 700 barrels a day." Later in the conversation, the CS asked Ortega and Rees if they had any tips for him. The CS said Jensen scared the hell out of him and said FBI was out there and you have to be careful who you talk to. Ortega replied, "Mexicans, they don't speak fucking English that's who you want to talk to, Independents." When explaining how to avoid law enforcement, Rees said, "Yeah I know Texas has some of the FBI guys that like you will talk to, and they will be like, well I don't really

get it legally and you just go ok never mind. They make it pretty obvious." Rees later told the CS he got 2400 barrels last week.

17. Later in the conversation the CS how they could avoid being "busted," Ortega explained that the CS needed to make sure the drivers always sign the load tickets because "that covers your ass."

18. Based on the facts set forth in this affidavit, your affiant has probable cause to believe that Thomas Rees and Christopher Ortega have committed violations of Title 18 U.S.C. § 2314, and 18 U.S.C. § 2, aiding and abetting.

Respectfully Submitted,

TRENT BOONE Digitally signed by TRENT BOONE Date: 2025.08.23 15:26:32 -06'00'

Trent Boone
BLM Special Agent

Subscribed and sworn to before me this
25th day of August, 2025.

~~Jerry H. Ritter~~ Barbara S. Evans
United States Magistrate Judge